Appeal number 223269, United States v. Joseph Fuchs, III. Mr. Gross, hello. Hello, Your Honor. Thank you. May it please the court, my name is Michael Gross. I'm appearing on behalf of Joseph Fuchs. Mr. Fuchs was convicted of three crimes in the District Court for the Southern District of Illinois, all three crimes involving his travel, planning to travel to the Philippines for the purpose of having sexual relations with a minor. Mr. Fuchs has raised three issues on appeal. The first has to do with the District Court's finding that the birth certificate of the victim, MV1, was authentic and admissible and could constitute proof of that element of all three offenses that she was under the age of 18. The second is the court's admission and reliance upon Mr. Fuchs's statement to a law enforcement agent at an airport. And the third is the combination, the insufficiency of the evidence to prove any of the three offenses beyond a reasonable doubt, in particular because of the absence of the victim's age. Mr. Gross, why wasn't any error in admitting the copy of the birth certificate harmless? I mean, I take your point that we may be lacking, you know, this attestation from the sort of U.S. or Philippines consulate or embassy official that is indigent by Rule 902.3, but do we have any concrete reason to doubt the authenticity of the document? I mean, the copy was obtained from the Philippines Statistics Authority, and we have an attestation from Ms. Grand to that effect. On the surface, it looks great, but we have rules, and the not strict enforcement, but reasonable enforcement of the rules as written and as they ought to be applied in this situation. And the particular rules we're talking about, it starts with 903.2, I'm sorry, 902.3, and then it is a foreign record, but 902.4 applies when that's a copy. And that requires a certification that is an original from an embassy official or a suitable Philippine government official. The birth certificate and Ms. Grand's signature are both copies. The birth certificate itself is clearly a copy, and Ms. Grand's signature, I'm looking at the transcript page, volume 1, page 68, where counsel for the government acknowledged that the, I'm just reading, that's what I said, the copy of the attestation. We have the original page 2 of the birth certificate that Officer Robel was handed a copy, a physical copy. So the birth certificate and the attestation, as I understand the record, are copies. And the reason for the 11th hour effort, the effort may have been ongoing, but the certification, the cover letter arrived, excuse me, at the end of trial. And that is the letter that has, it's written on somebody's, some Philippine officials, Justice Department, Philippine Justice Department officials letterhead. It's addressed to somebody else. It's written through what Mr. Hammer, I believe, who appears to be a perhaps an embassy official, and who might be suitable for certifying for that final certification. Was that argument raised below regarding the final certification? I'm sorry. The final certification. We focused more on the attestation. The attestation would be Ms. Grand's signature, and I think that counsel for the government acknowledged at trial that that was a copy. Did they acknowledge that it was a digital signature? I also argued that, and it was argued in the district court, that the signature is a digital signature. I, the more, I don't see any indication that the signature on the cover letter, that I can't decipher, doesn't appear to be the signature of anybody on the letterhead. There's three or four different names, but it's someone signing for Mr. Ortha, who does not appear to be a qualifying person. With the attestation, though, moving back to that point, is the digital signature considered not an original signature? I didn't find authorities saying it wasn't, and so I fall back on the rule, or the rules, and the rules say you need an original. It says you need original signature? No, it says you need an original document. And so going back to my question, we need to define that term original, because it seems as though we're suggesting that original does not incorporate digital signatures. So what support do we have for that? I don't have case support, Your Honor, I just have the text of the rule. And behind the text of the rule, what would be the purpose of the rule? Why would you require a copy to have an original letter, finally certifying it? And I think the answer to, the court, I am asking the court to define the term in the context of this case, or to construe the rule in the context of this case, and my suggestion would be that the reason for 902 point, 902 parent 4, 902 parent 4 requiring an original is so that something actually got signed by somebody who knew something about this potential error in admitting, let's say, you know, all right, wouldn't any potential error in admitting the birth certificate be harmless? Her age was confirmed by ample evidence in the record, including the recording of Mr. Fuchs's interview at O'Hare, the Facebook messages that acknowledged that she was in fact 14 in February of 2018 when he met with her in the Philippines. My response to that, Your Honor, is the reason that for the kind of elaborate statement of the case, tracking back through the evidence, there is no basis in the evidence, no admissible evidence that could have established that Mr. Fuchs actually knew her age. His remarks about her age begin with Facebook texts from his account to her account, to the account attributed to her, and his information comes from her, and that information is not, the only place you can attribute his information is to her texts, and the district court ruled pretty clearly through the case that he wasn't, that the court was not admitting the text messaging from MV1's account to prove the content of anything in it. It was just to provide context for what he was saying, and what he's saying is responding to what she tells him. The, you can, so I would say that in the record there's nothing that could, that shows him what, how he would know or that he did know her age except from what she said in her, in her text messaging. And with respect to her text messaging, one reason to not admit it, that the district court was correct in not admitting it to prove its content, just a part of the equation, was that the government's evidence established that the geolocation for the account that it was attributed to MV1 was in Manila, and the government's evidence established that MV1, as they knew her, lived in Naval, and the government's evidence establishes that Naval is approximately 600 miles from Manila. So whoever is text messages appears to have been in Manila, and MV1, excuse me, appears to be in Naval. So it's... One of the difficulties, one of the reasons the case is difficult for your side is your client, when he came back to the O'Hare Airport, admitted that he traveled to the Philippines to sexually assault a minor. He did, in fact, do so, and he regretted it. That's a, that's a very, that's a, you know, if you could swap that fact out, I'm sure you would, but that's a, that's a very, very difficult fact for you to deal with. Took me a long time to write the brief, Your Honor, I agree. It's a huge issue. The, and the, the response that I have is two responses. One, he doesn't know her age. There's, there's no basis for finding that he knows her age. That's, that's part of the response. Another part of the response... When you said, you're, and you're, you're really emphasizing no definitively, because he absolutely believed from just the, just the, the, the face of the messages, he believed she was underage. There's no question at all about what he believed. He didn't have credibility to his text messaging. No question whatsoever. Well, it's just, it's a statement of the defendant, right? So it's, unfortunately for you, it's going to come in, and it did. The, the, there's a separate issue. The second issue in my brief, and my third issue in my brief, and the second issue I hope to talk about today was the challenge to the admissibility and reliance on the, the statement at the airport. But the statement at the airport is huge. It's, it's all of the emotional impact, not all of it, but it's a huge part of the emotional impact of this case, which it's, the story is, is a very difficult story. And, and there's no question about what was on his mind, as long as you ascribe credibility to it, to his, his text messaging. But that's what's on his mind. The, the, the government had the burden of establishing beyond a MV1 was a child under 18 years of age. The government needed to prove that. And, and, and, and so I'm suggesting that you can't prove that by, with, with evidence of Facebook text messaging from an account attributed to her that was not admitted to prove the truth of its content. The court, the district court recognized that would be hearsay for that purpose. And, and if he doesn't know from, from what she purportedly told him in text messaging, how does he know? And it's, it's not my burden to prove that he, it wasn't the trial of defense attorney's burden to prove at trial that she wasn't 18. It was the government's burden to prove that she was, beyond a reasonable doubt. And, and, and I agree. It's, it's, it's, I spent a long time writing the brief, but I think that that when you, when you scour the record for how he would know, there isn't anything. He only knows what she told him. And, and so that's, if there aren't any more questions about the, the, the, I see that I'm well into my rebuttal time, so I'd like to wrap up now if I could. Thank you. Thank you, Mr. Cruz. Okay. Good morning. May it please the court. My name is Allie Burns and I'm appearing on behalf of the United States. The district court in this case did properly admit the birth certificate as well as the defendant's statement. There was sufficient evidence to support the convictions that the district court ultimately reached and we would ask that the court affirm the district court's findings. I might want to first . . . What does Exhibit 46 and Mr. Orth's letter add in terms of the admissibility of the copy of the birth certificate? Because I don't, I don't see substant, you know, substantively what, what his letter says that confirms the authenticity of the document. So Exhibit 46, which I put into my brief in part, but also came with the certificate as well as the birth certificate, so just that letter was the addition. That's the final certification that came from the Department of Justice through the United States Embassy confirming that the certificate with the birth certificate is signed by the proper person, that that is a individual who's employed by the statistician's authority in the Philippines. So Government 46 was just one form? It was just the final certification? It was not. So the actual exhibit is that final certification, which is within the brief, that, that letter from the Department of Justice, as well as the certificate of compliance and the birth certificate front and back. The attestation, is it included in Exhibit 46? Yes. I think that's why it's confusing because it's still labeled Government Exhibit 2, and so the way that I understand it, it was initially offered at the end of evidence as Government Exhibit 2. The district court said we already have a Government's Exhibit 2, and that's why the documents as a packet were really labeled as Exhibit 46. Yes, and I can understand how that's confusing. So that's correct. Initially, the final certification with the certificate and birth certificate was not received. It was delayed in the mail during trial. So we submitted under the idea of the court being able to forego the final certification for good cause, the certificate and birth certificate. That was Exhibit 2. Then, those were copies though, correct? The birth certificate is a copy. The attestation was received by the agent in the Philippines in person. All right, and so the digital signature was on the attestation that the agent received in the Philippines. Correct. That's not clear in the briefing either. Procedurally, when the documents were received, what's noted in the brief is that the birth certificate was received, and so the attestation, it's not clear when that was presented to the court. I testified to Exhibit 2. That was at the beginning of trial, the first witness, and testified to physically going in person in the Philippines. He's from the Philippines and picking up a copy of the birth certificate with that attestation Exhibit 2. When did the defendant receive in the course of the prosecution a copy of the attestation and a copy of the birth certificate that was attached to the attestation? Was that in discovery? Yes, well in advance of trial. Okay, and so is that the reason that you then say, so even if there's a problem with some dimension of whether 902.3 is satisfied, there's no problem with the good cause safe harbor. There's two arguments. Because of the early disclosure of the attestation and the birth certificate, it was very clear, in other words, to the defendant that the United States was going to be relying upon a birth certificate from the Philippine government to prove the age of the victim. Correct, and then once the defense counsel began to raise any issue in pretrial motions, that was when the final certification was requested, which is then Exhibit 46. It didn't show up until trial, but it was then disclosed. And one of the things, so what I would note is, I think the Exhibit 46 in whole, because it is the final certification, the attestation and the birth certificate, that complies with Rule 902.3 and 4 completely. What evidence do you have that the digital signature certifies itself still as an original? So, Your Honor, admittedly, there is not a lot of case law out there. Is there any? Because the government hasn't presented any. Yeah, I would point the court to United States v. Hill. It's a Seventh Circuit case. It's a hundred years old. It's from 1923. But what I think is instructive about that is, it is talking about a fax signature. And I think that is the most comparable to a digital signature, in that I think there's some level of presumption of regularity in today's world, just like there would have been. What's the citation? Because you didn't present it in the brief. We want to make sure that he has that. Your Honor, I do believe I cited to it within the brief, but I do have the citation here as well. I want to make sure Ms. Gross has that. Yes, of course. One second. 288. 288 F 192. It's on page 21. Thank you. It's from 1923 from the United States. Based on that, that was properly admitted, and that I think that, you know, a digital signature in today's world is common. It's often used. I think that it has some time stamp. There are often numbers included with that digital signature to show that it is valid. And I would also say that there was no evidence here to refute that validity. That may bring that into question. I would also note that as to the final certification, any question about the validity of that, that was never raised to the district court. It was actually only raised for the first time by the defendant in the reply brief, saying that there were any issue as to who that came from or how it was signed. And so I would say that that was not properly preserved. And looking at the defendant's statement, I know that wasn't discussed in length, but our position is that was prior to trial and pre-trial motion in writing stated that he also believed that the statement was admissible at trial, affirmatively stated that it was admissible. And so based on that, that was absolutely waived, and that would be our position as to that. Let me ask you this. Does the government believe to prove this offense beyond a reasonable doubt that you even had to come forward with a birth certificate? Your Honor, I think that's a, there's, there's, I have two answers to that. So I think that it's not necessary. My position would be that there is substantive evidence within the text messages, the Facebook messages, and the defendant's statement. And again, I'm talking about the defendant's text and Facebook messages, not the minors. And the reason that that is also substantive evidence of the minor's age is because the defendant didn't just speak to this person online. He traveled and spent a week with her, had sexual relations with her while he was there, had an opportunity to observe her, to engage with her, to interact with her. So I think those statements that he makes are also substantive evidence of her age. Did the government admit into evidence the photograph taken at the Philippine Hotel? Yes. Could, could the finder of fact had relied upon the photograph in addition to what you just said? Absolutely, could have relied on photographs as well. That's, that is very true. And, and beyond that, I also think that that evidence would be sufficient. And I would also note that the defendant was charged as to count one in the, or not in the alternative, but there was a lesser offense. He wasn't ultimately found guilty of that lesser, lesser offense, but that was the attempt, the attempt enticement and coercion. And the court considered that obviously didn't reach that because found him guilty of the actual committed offense. But under the attempt, you do not have to establish the minor's age. It's just the defendant's belief of the age. And as defense counsel admitted, that was overwhelming that he believed this minor to in fact be a minor. And so I think that the court could have also found the defendant guilty of that if they did not, if the district court found there wasn't enough evidence as to establishing the actual minor's age. But, you know, our position would be there was, based on the birth certificate and the statement and the Facebook messages and the text messages, because these established that they occurred before and after the time with the minor. I do want to make sure that I just have on the record here, Exhibit 46, not Exhibit 2, Exhibit 46, now that you have it as a full packet that comes in the last stage, is the government's position that the attestation is original? Yes, Your Honor, because it's the digital signature. I mean, I think in, in this day and age, it was a printed copy through the embassy that they obtained with the birth certificate and then filed this final certification that they requested, the United States Embassy requested from the Philippines Department of Justice. And so I think based on that, that it would be admissible. I don't think we even have to reach the question of was there good cause to forego the final certification, although the record obviously indicates, and I think the court made statements that there was. Unless the court has any other questions as to the birth certificate, the defendant's statement, or the sufficiency of the evidence, I would rest on my brief and request the court affirm the convictions. Thank you. Thank you very much. Thank you, Ms. Burns. Mr. Gross. Thank you, Your Honor. I'm gonna add a few minutes. You can share some of Ms. Burns' testimony. Let, let's give you four minutes. Thank you, Your Honor. First, with regard to the, whether the, the attestation, which was part of both exhibits, 2 and 46, is an original. I wasn't there. I have the highest regard for Ms. Burns. If I ever have to be prosecuted, I hope it's by someone with her ability and integrity. I'm just going by the record. On page 67-68 of volume 1 of the transcript, there seems to be an acknowledgement to me that the attestation that was attached to the birth certificate is a copy, as opposed to an original document, and that's what made it necessary to have a final certification. Also, the, this is, in retrospect, this is a briefing error on my part, but I didn't recognize the government's reliance or the district court's reliance on that final certification. I thought the district court did not accept that as final certification and just said they announced that, found that the birth certificate was presumptively authentic, subject to revoke. The, and so it wasn't, I did not address it in the initial brief and did address it in the reply brief. The, and the, the reason that I think that that proposed final certification couldn't serve is that Rule 902.3 tells us who has to, who is qualified to make the final certification, and for the life of me, I can't find that, that, that rule being satisfied by, by the cover letter submitted by the government. That signature might be Mr. Hammer's signature, but you can't tell it, and the letter doesn't purport to be Mr. Hammer's certification. It purports to be something coming from somebody in the, in the Philippines Justice Department addressed to somebody else, who I believe was, was Philippine, Philippine government, through Mr. Hammer, and then signed for yet another Philippine government official, Mr. Ortha, by somebody who could have been Mr. Hammer, but I can't read the signature. I, I don't think anybody can read it. And, and then with regard to, I'll wrap up quickly, with regard to the need for the, the birth certificate, whether it was required, that's not, that certainly was not the only way the government could have proved MV1's age. A government agent interviewed her, live, knew that she wasn't wanting to cooperate, and in fact she didn't come back for a second interview. He could have asked for the Philippine government provides multiple forms of identification to citizens, and he didn't ask for that. The, the, there, there are any number of ways that you might prove the age of an individual, but, but in the context of this case, the evidence of what, what Mr. Fuchs knew, or thought, or believed, isn't sufficient to establish beyond a reasonable doubt what her age was. I don't think he can be convicted under any of these three counts of the indictment without proof beyond a reasonable doubt, not of what he thought, not of what he was believed, or was absolutely convinced of, but what her age was. Thank you. Thank you very much, Mr. Groves, and thank you, Ms. Burns. Case will be taken under advisement. All right.